IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **In re:** § | | |
| **Jeff Riviera and** § | | **Case No. 03-70147** |
| **Barbara Riviera,** § | | |
| Debtor. § | | |

| | | |
|---|---|---|
| **Jeff Riviera and** § | | |
| **Barbara Riviera, Plaintiffs** § | | |
| § | | |
| **and** § | | |
| § | | |
| **Michael Schmidt,** § | | |
| **Chapter 7 Trustee, Plaintiff-Intervenor** § | | |
| § | | |
| **Plaintiff** § | | |
| § | | **Adversary Pro. 05-7023** |
| **v.** § | | |
| § | | |
| **Texas State Bank,** § | | |
| Defendant. § | | |

## MEMORANDUM OPINION ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

Texas State Bank seeks to dismiss this adversary proceeding and seeks summary judgment against the plaintiffs. The Court will consider the entire motion as a motion for summary judgment. See FED. R. CIV. P. 12(b) as incorporated by FED. R. BANKR. P. 7012.

### Relationship of Parties

In 1994, Texas Steer, Inc., a corporation owned by the Rivieras, contracted with Robert Perales to build a structure on 1.45 acres in Weslaco, Texas. The Rivieras executed the sales contract both as officers of Texas Steer and individually. In 1995, Perales entered into a contract for deed with the Rivieras d.b.a. Texas Steer, Inc. providing for the sale of the Weslaco property to the Rivieras d.b.a. Texas Steer, Inc.

1

In 1998, Texas State Bank provided $220,000 of financing to Perales, secured by a first lien on the land and improvements in Weslaco.

In 1999, Perales transferred the Weslaco property jointly to Texas Steer, Inc. and the Rivieras by warranty deed.

In 2001, Texas Steer filed a corporate bankruptcy petition. In its schedules, Texas Steer claimed to own the Weslaco property. The schedules were signed by Mr. Riviera. Texas State Bank sought relief from the stay in Texas Steer's bankruptcy case. Texas Steer defended against the motion for relief from the stay. Nevertheless, relief was granted and Texas State Bank foreclosed on the Weslaco property in 2003.

This lawsuit ensued in which the Rivieras claim that Texas State Bank is liable to them with respect to the foreclosure of the Weslaco property.

## Legal Standard

A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005). Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial. At all times, a court views the facts in the light most favorable to the non-moving party. *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006). However, to weigh evidence would result in a credibility determination which is not part of the summary judgment analysis. *Hunt v. Rapides*

*Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *See MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006). A court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Id.; see also Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005); *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). The movant may seek summary judgment if insufficient evidence has emerged from discovery to support the non-moving party's claims. 10A C.A. Wright, A. Miller & M.K. Kane, Fed. Pract. & Proc. Civil § 2727, pp. 472-74 (3d ed. 1998). At this time the non-moving party must respond with sufficient evidence to support the challenged element of its case or present evidence to raise a material issue of fact. *Id.; Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *See Condrey*, 431 F.3d at 197.

## Causes of Action

Plaintiffs allege three causes of action. First, plaintiffs allege that Texas State Bank violated the Texas Deceptive Trade Practices Act by (i) making a commercial rather than a residential loan against the real estate at issue in this case; and (ii) representing that it had rights and remedies under Texas law that it did not have. As part of this cause of action, plaintiffs allege that Texas State Bank was negligent in its administration of the loan. Second, plaintiffs allege that Texas State Bank engaged in organized criminal activity by entering into a criminal conspiracy with the intent to commit felonies. Third, plaintiffs seek a declaration that Texas State Bank's foreclosure was wrongful.

## First Cause of Action: DTPA Violations and Negligence

The Rivieras allege that Texas Sate Bank made a commercial loan to Perales when it should have made a mixed use loan for a property that would be used for both business and homestead purposes. The Rivieras allege that the Bank's principal was aware of the planned mixed use of the property but proceeded with a commercial loan. The Rivieras further allege that they did not become aware of the fact that Texas State Bank made a commercial (rather than a mixed use) loan until after November 2003. In November 2003, Texas State Bank foreclosed on the Weslaco property. The Rivieras allege that the failure to utilize a mixed use loan form was a misrepresentation of Texas State Bank's rights. Moreover, the Rivieras allege that the Bank violated the Texas Deceptive Trade Practices Act (the "DTPA") by not following state banking law, using the wrong loan forms, failing to deliver notices required of a homestead loan, and failing to properly supervise the construction of the home.

Texas State Bank does not deny that it made a commercial loan. It also does not deny that its principal had knowledge of the homestead character of the property. Instead, Texas State Bank asserts that the Riviera's claims are barred by theories of estoppel, standing under the DTPA and the absence of the required element of reliance under the DTPA. The Court begins with an analysis of the requirement of reliance.

To make a claim under one of the "laundry list" violations of the DTPA, a plaintiff-consumer must have relied on a misrepresentation made by the defendant. TEX. BUS. & COM. CODE. § 17.50(a)(1)(B). There is an exception to this requirement if the action arises under § 17.50(a)(3) of the DTPA. *Mays v. Pierce,* 203 S.W.3d 564, 572 (Tex. App.—Houston [14 Dist.] 2006, pet. filed). The Rivieras seek relief under only § 17.50(a)(1)(B) for a violation of § 17.46(b)(12) of the laundry list of DTPA violations. The Rivieras offer no evidence of their

reliance on the allegedly deceptive actions of Texas State Bank. On the contrary, the Rivieras allege that they did not become aware of the alleged misrepresentations until after this litigation began. No relief is sought by the Rivieras under § 17.50(a)(3) (unconscionability). Summary judgment is granted as to all claims arising under § 17.50(a)(1)(B).

Because there was no reliance, the balance of the DTPA issues raised by Texas State Bank are moot. Summary judgment is granted on the first cause of action.

However, the Court finds that the facts pled by the Plaintiffs may set forth a separate claim for fraud under Texas law. Plaintiffs will be given an opportunity to amend their complaint to set forth the fraud claim as a separate cause of action. In setting forth their fraud claim, Plaintiffs will be bound by Rule 9 of the Federal Rules of Civil Procedure.

Texas State Bank argues that the negligence claims and breach of fiduciary duty claims are not actionable. The Court agrees. *See Peterson v. Mutual Sav. Inst.,* 646 S.W.2d 327 (Tex. App.—Austin 1983, no writ). Texas State Bank owed no duty to inspect the construction. At the hearing on the motion for summary judgment, the Rivieras alleged for the first time that Texas State Bank was a successor to Perales for the purpose of construction defects. That allegation is not in the pleadings and there is no evidence that supports this allegation. Summary judgment is granted on the negligence and breach of fiduciary duty claims.

### Second Cause of Action: Organized Criminal Activity

The allegations regarding organized criminal activity, criminal fraud and criminal conspiracy are not independently actionable. *A. H. Belo Corp. v. Corcoran,* 52 S.W.3d 375 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

The Rivieras argue that the alleged Penal Code violations can trigger additional punitive damages under § 41.008 of the Texas Civil Practices and Remedies Code. That allegation

merely supports the proposition that the evidence of alleged Penal Code violations may be admissible at trial if there is a separate cause of action. It does not establish a separate cause of action.

At the hearing on the motion for summary judgment, the Rivieras acknowledged that this issue does not create a separate cause of action.

Texas State Bank is entitled to summary judgment on the second cause of action.

### Third Cause of Action:
### Declaratory Judgment and Wrongful Foreclosure

Texas State Bank argues that the wrongful foreclosure claim is precluded because the Rivieras did not have fee simple title at the time that Texas State Bank's lien was created and because of estoppel.

With respect to the issue regarding whether the Rivieras can claim a homestead in property not owned by them in fee simple, the Court has reviewed the applicable case law and determined that this issue cannot be decided on summary judgment. There is a material fact issue as to whether Texas State Bank had actual knowledge that the property was intended to be the Rivieras' homestead. The contract for deed was executed prior to the imposition of Texas State Bank's lien. Texas courts have long held that a contract for deed can support a homestead claim. *See Laubhan et al. v. Alliance Life Ins. Co.*, 134 S.W.2d 788 (Tex. Civ. App.—Amarillo 1939, no writ). The Rivieras' contract with Perales specifically referenced that the Weslaco property was to be an owner occupied property. Although there is no direct summary judgment evidence that Texas State Bank was aware of the contents of the Rivieras' contract with Perales, the Court recognizes that normal banking practices would include a review of such a document. The existence of the contract is not sufficient as conclusive proof of knowledge by the Bank; it is sufficient to create a fact issue for trial.

Texas State Bank also alleges that judicial estoppel precludes the Rivieras from asserting their claims. In general, Texas State Bank argues that the Rivieras' prior conduct in the Texas Steer case precludes the Rivieras from taking an inconsistent position in this case. The Rivieras allege that the conduct is not necessarily inconsistent. According to the Rivieras, Texas Steer could claim fee ownership (and thus allege that the property was part of its estate) and the Rivieras could nevertheless allege a homestead right. Interestingly, in the Texas Steer case, the Rivieras identified both that Texas Steer owned a fee simple interest in the Weslaco property *and* that the Weslaco property was the Rivieras' homestead. The Court finds that a fact issue is presented on the judicial estoppel question. It will be reserved for trial.

The Rivieras also allege that the foreclosure was invalid because notice was not given to the Rivieras of the foreclosure sale. Texas State Bank was foreclosing on a lien granted by Mr. Perales. If the lien granted by Perales was valid, the notice of the foreclosure sale itself was valid. The Rivieras were not entitled to notice under § 51.002 of the Texas Property Code.

Accordingly, Texas State Bank is entitled to summary judgment on whether notice of the foreclosure sale was valid. The issue of the validity of the lien is reserved for trial.

Signed at Houston, Texas on January 4, 2007.

_____
Marvin Isgur
**UNITED STATES BANKRUPTCY JUDGE**